Good morning, Your Honors. Thomas Holden for Appellant and Cross Appellee Travelers. Mr. Holden. The fundamental initial issue in this case is whether Travelers had a duty to defend at all. The trial court agreed that Texas law governs that determination, and that was correct. This is a policy that was issued in Texas through the Travelers Texas Underwriting Act. Is the California law significantly different on that issue? The only difference is whether you look at things outside the complaint or consider only the allegations in the pleadings. Now, it's our view that whichever way you analyze it, you come to the conclusion that there's no duty to defend, but the analysis is very different. Under Texas law, you only look at the allegations in the pleadings, and whereas in this case, the key factor is whether the defendant was acting in an insured capacity, then that capacity has to be alleged in the pleadings for there to be a duty to defend. There's a Fifth Circuit case applying Texas law that's right on point from 1999, the Western Alliance case, and in that case there were three amended complaints against the party claiming to be uninsured. The middle of those two was the only one that was actually at issue for determining the duty to defend. In the first and third ones, there were allegations that the insured was acting as a property manager, and that would be the only basis for the insured to be an insured, is if they were acting as a property manager. Applying this so-called eight corners rule, which I guess is out of Texas. Yes. How does the result under that application differ from your contention that Texas law should not apply? Well, my contention is that Texas law should apply, and under the eight. I'm sorry. Yes. I'm trying to get to the heart of where the point of difference is here. Under Texas law, there's no allegation in the underlying complaint that Mr. Butcher, the plaintiff, was acting as an officer or director of Legacy Partners, Inc. Legacy Partners, Inc. is a named insured under the traveler's policy. Mr. Butcher is not. Mr. Butcher's coverage would exist only if he were acting as an officer or director of Legacy Partners, Inc. in the conduct for which he was being sued. The underlying complaint does not allege anywhere in it that he was acting as an officer or director of Legacy Partners, Inc. It doesn't even mention Legacy Partners, Inc. But what about the reasonable inferences to be drawn from the allegations in the complaint? Texas rule also is that to be read very liberally, right? Well. And that's apparently the way Judge Ilston looked at it. Right. Well, what Judge Ilston did is she concluded that since the names of the many corporate parties in the case included the word legacy in them, they must have been legacy subsidiaries, and therefore you can infer that he was acting on behalf of those parties. But they are not legacy subsidiaries. Legacy Partners, Inc., the named insured, does not have any subsidiaries, and that's undisputed. There's clear evidence in the record, undisputed. The names, the parties in the complaint that have the word legacy in their names are all owned partly by Mr. Butcher and partly by Mr. Pogue, but not by Legacy Partners, Inc. And so they are not named insureds, and he was not acting in their capacity anyway. The allegations of the complaint are that he was acting on his own for his own interest, and that's very clearly alleged in the complaint that he was acting to harm Mr. Pogue, to steal a lot of the profits and the value of these co-owned companies from Mr. Pogue and was not acting on behalf of Legacy Partners, Inc. And that's why I wanted to talk about the Fifth Circuit case, Western Alliance. But, counsel, the question concerning coverage, first of all, the trial judge did apply Texas law to determine whether there was a duty to defend, right? She purported to apply Texas law. And she cited the National Union case, right? And relying on that case, she said that even applying the eight corners concept, all ambiguities are to be resolved in favor of coverage. That's a correct statement in Texas law, correct? Reasonable inferences are to be applied in favor of coverage. And the coverage issue could only be analyzed properly in context of the claim for defamation, right? The claim for defamation is the only possibly covered claim that was in the complaint. Okay. So you have the article that appears in the business examiner here in San Francisco. Which is not alleged in the underlying complaint. Well, all right, that's something. There's no allegation in the underlying complaint about any newspaper article or anything. But the defamation arose out of that article, right? And that's a fact outside the complaint. So under California law, you would consider that article,  under Texas law, you don't look at that. Under Texas law, you look at the allegations in the complaint, and that's it. And the allegations in the complaint are simply that he made disparaging statements about Mr. Pogue. It doesn't say that he did it in any connection with Legacy Partners, Inc. It doesn't mention Legacy Partners, Inc. It says he did it for his own purposes in connection with all of these other dozens of pages of allegations of the conduct that he was engaged in for his own benefit for trying to usurp some of the rights of the corporations. And that's where I think Judge Ilston went wrong. She purported to apply Texas law, but, in fact, she looked at this newspaper article and considered that in deciding whether there was a duty to defend. But under Texas law, you cannot consider that. Texas Supreme Court said a few years ago that the insurer is entitled, entitled to rely on the allegations and the pleadings and need not go beyond them. And, in fact, in this Fifth Circuit case, Western Alliance, applying Texas law, there were three complaints. Two of them alleged that the insurer was acting as a property manager in the insured capacity. The middle complaint, there were some pages missing from it in the record on appeal, and the court said, we therefore can't conclude there was a duty to defend. We need to get those pages and find out whether those same allegations are there. And, obviously, in the absence of those allegations, that means there is no duty to defend. And so you can't even draw inferences from other pleadings. You can't rely on the fact that it didn't say that he wasn't acting as a property manager. It has to actually be alleged that he was acting in that capacity. In their surreply on this issue, the plaintiffs raised that they did not address Western Alliance in their opposition brief. In their fourth brief on appeal, in a footnote, they stated that the court relied both on actual facts and on pleadings, but that was only for the duty to indemnify. And it's very clear when you read the opinion that for the duty to indemnify, they looked at the actual facts. For the duty to defend, they refused to rule on it because there were pages missing from the complaint. So applying that to this case, we look at the underlying complaint, and all that it says is that Mr. Butcher was acting to usurp corporate opportunities from Mr. Pogue and to usurp corporate monies from Mr. Pogue, and that in connection with that, he made some defamatory statements. It doesn't say anything about acting on behalf of Legacy Partners, Inc. Well, let's make it clear. It says he made false and disparaging statements to members of the media. Yes. Okay. It doesn't mention the particular medium or vehicle for those allegedly defamatory statements. But how far does the duty under Texas law extend to embrace the concept that there would be a precise way, which discovery could later reveal, to determine whether or not whatever the statements were and to whomever they were made, they were made in connection with Legacy Partners, Inc.? Texas law extends so far as to say that if it doesn't allege that he was acting in that capacity in the complaint. What authority exists for requiring Texas law to be applied with that level of precision and specificity, given that notice pleading is still a factor in Texas procedural requirements? Well, there's this Fifth Circuit case, the Western Alliance case, where if you're missing pages of the underlying pleading, the court couldn't conclude there was a duty to defend. There was an allegation in that complaint that the insured installed a water heater negligently. Certainly, if you were allowed to infer that he was acting in an insured capacity, you might be able to infer that in installing a water heater he was acting as a property manager, particularly where it was alleged in the other complaints. But because the pages were missing, the court refused to draw that inference and said we need to get those pages to find out whether there's a duty to defend. And so that is Texas law. We also have the Feldman case, which is a Texas court of appeals opinion. It's unpublished, but in Texas, unpublished opinions can be cited and are not prohibited from citation. The Feldman case alleged numerous activities that the insured engaged in, did not allege that it was in the conduct of a particular business that was the named insured, and the court said since it didn't allege it, there's no duty to defend. And so if we're going to apply Texas law, we have to apply the Texas Eight Corners Rule, and under the Eight Corners Rule, you do not get into speculation or inferences about whether it might be an insured capacity if it doesn't allege that it is. Now, even if we were to indulge it. I mean, you talk about, you know, maybe speculation, but again, if it's a reasonable inference that he was acting in an insured capacity, namely as an officer or director of legacy partners, then there's coverage under Texas law. Do you agree with that? Yes, but there's nothing in the complaint to support such an inference. The only entities that are alleged there are not subsidiaries of Legacy Partners, Inc. Their only connection with Legacy Partners, Inc. is that Mr. Butcher owns Legacy Partners, Inc., and he also owns interests in these corporations. That does not mean that he was acting on behalf of Legacy Partners, Inc., his company over here, when he was engaging in double dealing and misappropriation, allegedly, with his other businesses over here. There's no basis for such an inference. You can go outside the complaint to find such a basis for such an inference, but that is prohibited under Texas law. You simply look at the allegations and the pleadings, and since such an allegation, there is no duty to defend. Now, in this case, I think even if you do go outside the complaint and bring in that extrinsic evidence, then you're left with a situation where you have one business partner defaming the other business partner. And there are several cases on point that hold that that is not covered under general liability policy because it's not conduct in carrying out the duties of an officer or director of a corporation or a partnership. The Winther case, the Loans case, the Malazzo case, they all say that. But you're speaking of partners in the colloquial sense. I mean, after all, right, this is not a partner. This is a corporation. So it's possible for a corporate director to accuse another another director of malfeasance, you know, like stealing a corporate opportunity. Right. And that would be in an official capacity as a director. If if that if if it were if there were an allegation that that the example is the Barnett case, if an allegation that he was acting as a whistleblower of some kind, then that might be something that could be viewed as being within the duties of an officer or director. But the only way we get to even considering this is looking at the extrinsic evidence. And the extrinsic evidence doesn't suggest he was acting as a whistleblower at all. It suggests that he was defaming Mr. Pogue for his own purposes. And in fact, if you look at the allegation of the complaint, the whole basis of this is that they were business partners in all of these many corporate corporations and partnerships. They were co-owners and partners in these businesses. And the allegation is that he was defaming him in order to line his pockets from those businesses. You have about seven minutes left. You might want to consider reserving it to respond to the cross appeal. Well, I would like to reserve about seven minutes. So if there are no other media questions, I will reserve. Thank you. Good morning, Your Honors. I would also like to identify yourself for the record, please. Philip Borowski for the Respondents and Cross Appellants. Mr. Borowski. Legacy Partners Inc. and C. Preston Butcher. Thank you. I also would like to reserve perhaps five minutes to respond to Mr. Holden, since this is a respondent. But only with respect to the cross appeal. That's correct, Your Honor. All right. You may do so. Let me just give a very brief overview of all that's before you, because Mr. Holden spent a lot of time talking about one issue, which I think is the very weakest issue that travelers can raise. And because it's so weak, I think their entire position falls apart. Well, his position essentially is that under the Texas rule, eight corners rule, you construe these allegations very narrowly. Now, what's your response? My response is that if it is not determined, if it's not clear in the complaint, even applying the eight corners rule as to whether there is not coverage, there is a duty then to investigate. And in this regard, I think Judge Yeltsin prepared a very learned analysis of Texas law, that if it cannot be determined upon reading the complaint that there is no coverage, there is then a duty to investigate. You can't do what travelers seek to do and just avoid any responsibility. When you say investigate, you mean, in other words, they have to go beyond the eight corners? If it can't be determined from the eight corners that there is no coverage. Well, their position is that it can be determined because there is no allegation that he was acting. He's not a named insured in any capacity. And, you know, as an officer or director, there's no allegation that he was acting in that capacity. So I think it can be determined. If it can't be determined, then you have to go beyond the eight corners under Texas law. It can be determined. But I believe it can be determined. Well, there's no allegation. First of all, he's correct, isn't he, that Judge Yeltsin was mistaken in naming and thinking these entities were subsidiaries. Yeah, I don't think the issue is. And she referred several times that, well, you know, he was acting as an officer and director of a subsidiary, which is, you know, she considered a named insured. And that was clearly erroneous. Right. You agree that much. I don't think that's correct. I do. I do. I know you're saying these were subsidiaries. No. I'm not saying they were subsidiaries. I'm saying legacy. The issue of whether they were subsidiaries is not determinative of whether there's coverage. What is determinative is. . . But she seemed to think it was important. I'm sorry? She seemed. . . Judge Yeltsin seemed to think it was important. She gave several reasons why there was coverage. That was only one of them. She was very exhaustive in her analysis of why there was coverage. And I think the clearest reason why she concluded and why the law justifies the conclusion. Tell us why there was coverage in here. Legacy Partners, Inc. is a named insured. Preston Butcher is president, CEO of Legacy Partners, Inc. The press release was on behalf of Legacy Partners. How do we know that from the complaint? You can't say from reading the complaint that Mr. Butcher did not act on behalf of Legacy Partners, Inc. Well, he could have been acting on behalf of Lincoln Properties. And that he still would have been insured. What? That he would have been insured as well, because under the insuring agreement, any executive of Lincoln or Lincoln Property or Legacy Partners, Inc. are insured. Counsel, the sound isn't quite right. So if you could push the mic back a little bit or not be quite as close to it. I apologize. I'm usually speaking too softly. Okay. I'll try to monitor, moderate my speech. Right. So I think for travelers to contend that the law is that if there is any way that you could read the complaint to avoid coverage, that's what Texas law dictates. And I think that's absurd. And it's not supported by Texas law. It's not supported by all the cases that Judge Yeltsin so carefully analyzed, including the National Union case, including the Western Alliance case. What's your response on Western Alliance? Western Alliance, I believe, is consistent with what I just said, that Mr. Holden has tried to parse out the analysis to only apply to the duty to indemnify, I think the duty to defend is part of the insuring duties and requires an analysis, just as I've been describing, just as Judge Yeltsin explained in her decision, that if it cannot be determined that there is no coverage, then you go beyond the eight corners rule. The law was not a Texas law nor a California law. It was designed to allow an insurance company like Travelers to find any way it could to construe the complaint so narrowly that there would be no coverage. That undermines the whole purpose of both Texas law and California law. So let me get back to my overview. I welcome interruptions, of course, because your question is more important than anything else. But let me just make sure that we're oriented as far as what the issues are. We are asking this now to affirm the trial court's determination that there was a duty to defend under Texas law. We're asking the trial court to affirm the trial court's decision that all the defense fees in the underlying case ought to be awarded. We're asking this court to affirm the trial court's award that all the attorney fees awarded by Judge Yeltsin in prosecuting this case under Texas law and the grapevine decision is to be affirmed. We're asking this court to affirm the trial court's decision of the 18 percent interest pursuant to Article 21.55 of the Texas Insurance Code. We're asking this court to reverse the summary judgment determination, which, of course, has a different standard than the findings of fact. With respect to the free tender fees, that issue? You jumped a little bit ahead. Okay. Okay. Fine. Sorry. With respect to the trial court's granting of summary judgment, including us from having a trial on the issue of travelers' duty to indemnify and bad faith, which is governed by a de novo standard, we're asking this court to reverse that decision. And we're also asking this court to reverse the finding of fact regarding denial of free tender fees. So that's the overview. Well, now, with respect to those latter two issues, the free tender fees and the duty to indemnify, aren't we dealing with policy exclusions? Well, I think it really comes down to the no voluntary payment issue. I think that's also assumed in that issue. And I think that there are travel issues of fact as to whether this was a voluntary payment. The principal case in which both parties relied, and I think the court relied as well, is Kingstown. So which refreshment case is that like the economic necessity case? Yes. No, I have it. I have. If I could refer to that case specifically, I'm just going to put a couple of lines. California, on reading from the decision, California law enforces no voluntary payment provision in the absence of economic necessity, insurer of reach, or other extraordinary circumstances. And we submit that there are travel issues of fact on every one of those points, that there was a sweeping temporary restraining order that, based on the undisputed testimony of the chief administrative officer, Jim Anderson, as well as Jonathan Cox, the outside counsel, crippled the ability of the company to continue with the temporary restraining order. That was so important that you didn't even tell the creditors about it, right? It is true that that testimony, Mr. Anderson and Mr. Cox, wasn't before the trial court at the time of the ruling of summary judgment. The temporary restraining order was before the court at the time of the summary judgment motion. The testimony of Mr. Anderson and Mr. Cox were part of this record and I think is should be reviewed by the court in supplementing the record before the court at the time of the summary judgment motion. But I believe even if you exclude, for purposes of present discussion, the testimony of Mr. Anderson and Mr. Cox that established the crippling effect of the temporary restraining order and the economic necessity, you still have any reading of the temporary restraining order I think would raise at least a travel issue of fact that the far-reaching nature of this temporary restraining order, which basically prevented the company from functioning in any normal way, raised a tribal issue of fact as to economic necessity as well as exigent circumstances. Then there's a very interesting issue as far as whether there was an insurer breach. Judge Elston said that the insurance company didn't breach their obligation as of the date of the settlement, which was actually April 30th, 1999. They only had a few weeks to make a decision. They eventually, on July 1st, 1999, issued a letter, said, by the way, to our adversary, not to us, denying coverage. And we believe that that raises at least a travel issue of fact as to antecedent breach, because if travelers would have timely responded, and how long would it take for travelers to do what Mr. Holden says they should all they have to do, breach two documents and deny coverage, then there would be an antecedent breach. There would be a breach at the time of the settlement. And then, by the very wording of Jamestown, in fact, Jamestown is even more specific. In the very next page of Jamestown, it says, there are no numerous circumstances in which a no-voluntary payment provision may be deemed inapplicable or where disputed issues of material fact prevent resolution short of trial. First, insurers that decline a tender defense are out of luck. So travelers denies a defense on July 1st, 1999, about four and a half months, instead of April of 99 or March of 99, and because they were dilatory in responding to the tender, they're not out of luck. But if they did timely respond, they would be out of luck. So I submit, Your Honor, that this at least raises a triable issue of fact as to whether there was the type of breach of the insurer that would render the no-voluntary payment provision inapplicable, aside from the question of the sweeping nature of the temporary restraining order. With respect to – I was going to discuss the defense – let's see, I have about seven minutes left. I was going to discuss the defense fees and the prosecution fees, but that's not been raised in argument, so – and it's uncontroverted in the trial record. We have your briefs on that. Right. So – and finally, very briefly, with respect to the pre-tender fees, I think the issue with respect to the no-voluntary payment – also, the same briefing that I just presented before, with respect to the no-voluntary payment also applies to the pre-tender fees. There is no case anywhere that says a 14-day delay in tendering where there are such fees to be incurred as they were. She denied pre-tender, not because it wasn't reasonable or necessary, or even because      I think that's a very important point. circumstances, but because the tender wasn't yet made. And then there's an issue as to whether we have the policy at the time. The Fiorito case, the Shell Oil case, speak of circumstances – there's been no case directly talking about whether two weeks is too long or too short. The cases have suggested that a delay as indexed, indicative, as much as four months might not be unreasonable. Unfortunately, we don't have a case exactly on point. You know, we've discussed this Klein article, which we think provides an excellent analysis of the law throughout the United States with respect to pre-tender. I don't think Texas should directly address that issue one way or the other, but I think the reasoning of the courts that have concluded it, the scholarly treatises that I've mentioned, and the extraordinary circumstances at the time, and the – should justify the award of pre-tender fees. So I have four minutes and 47 seconds. I'll reserve my time if I may. You may do so, counsel. Mr. Holden, you have some reserved time. Thank you, Your Honor. First of all, with respect to the Texas Eight Corners rule, we are not saying, and I don't think the Texas rule is, that you construe narrowly the pleadings in the complaint. What we're saying is that if it's not alleged in the complaint one way or the other, you don't engage in construction or inferences to try to read it into the complaint. And in fact, the Texas Supreme Court just a few years ago said explicitly we will not read facts or allegations into the complaint that are not there. And that's why the Western Alliance case is right on point, because since they didn't have the whole complaint, they couldn't determine whether there was a duty to defend. Counsel, without discussing it in any detail, suggests that they did in fact look at outside facts, but I urge the Court to read the case. If you look at page 830, that's where they discuss the duty to defend. They do not look at outside facts at all. The rest of the opinion which deals with the duty to indemnify does. There is no duty to investigate in Texas on a duty to defend, other than to look at the pleadings in the complaint. If an insurer wants to do an investigation to find out whether somebody was driving a car that was actually an insured car under the policy. Suppose you can't tell from application of the eight corners process whether there's a duty or not. In that case, is there a duty to investigate? No. If it's a situation where the insured has to be acting in a particular capacity to be insured and it's not alleged, then there's no duty to defend. In some other situations, I mean, we could speculate about all kinds of other situations, it may be a situation where if you can't tell, then the inference is drawn that it was. For example, if it's not alleged whether the conduct was intentional or negligent, then you might draw the inference that there's a possibility that it was negligent and therefore covered. In the situation where the capacity is required, the Texas courts have said in the two cases we've cited, which they haven't even attempted to distinguish, there is no duty to defend. And, in fact, he referred to Judge Ilston as engaging in a learned analysis of Texas law. In fact, there is a very recent learned analysis of Texas law on the eight corners rule by a federal district court judge in Texas. It's in the Westport Insurance Corporation case at 267 F. Suff. 2nd at page 621. And this was April of this year, analyzing all of the various cases on the eight corners rule, and the court concluded that there were a few very narrow exceptions when you could look at outside evidence. Otherwise, it's based strictly on the pleadings. And in this case, it's not one of those narrow exceptions. Now, as for the voluntary payments rule, we submitted to the court recently the Lowe v. Golden Eagle case, a recent case from the California Court of Appeal. In that case, the insured tendered the claim to its insurer. The insurer did not take a coverage position much longer than the two weeks here went by, and the insured went ahead and settled on its own without notifying the insurer. The court held that was a voluntary payment because until the insurer has denied a defense, the insured is not free to settle on its own. It must get the insurer's consent if it wants to be reimbursed for that settlement payment. I don't see any distinction between this case and that one, except possibly that here, since the time was even shorter, it was even less acceptable for the insurer to somehow conclude that the insurer was intending to deny because they hadn't responded yet. Did the fact that there was this TRO outstanding make a difference? No, because it would take them five minutes to pick up the phone and call travelers and say, we want to settle this, please give us your consent. The fact that there's a TRO outstanding doesn't stop that. What the case is talking about, economic necessity had talked about, are a situation where you've got to respond right away to a complaint or you've got some requirement that you've got to do something right away. You don't have the information you need to contact the insurance company, and so you simply don't have a realistic opportunity to do that. This is not that case. They tendered it, and, in fact, they had the information needed to tender two days before the complaint against them was ever filed. That evidence is in the record. It's cited at page 22 of our, I believe, our responding brief. Is it Pogue's letter? Is that what you're talking about? Is that what you're referring to? There was a letter to Mr. Cox. I believe it was from Lincoln. I don't know if it was from Mr. Pogue, but it was a letter to Mr. Cox, which was attorney, two days before the Pogue complaint was filed, which gave all the information that was needed to tender claims to travelers. And, in fact, there's evidence of another tender to travelers that was made a couple of days before the actual tender in this case, and in that tender they said there are settlement negotiations ongoing, so you need to contact us right away. The tender in this case didn't say anything about settlement, and when they, two weeks later, were very close to settlement, they still didn't contact travelers to get consent. There was nothing preventing them from doing that. And under Loew v. Golden Eagle, if the insurer has not denied a defense, the insured must get the insurer's consent before settling, unless they are prevented somehow from doing that. And there was nothing preventing them here in this case. On the attorney's fees, California law should apply to those attorney's fees, even though Texas. We're still on the appeal. You haven't addressed the cross appeal, right? Well, the voluntary payments issue is part of the cross appeal. Right. But when you say the attorney's fees, that's- The attorney's fees is our appeal. That's right. Okay. On the attorney's fees, California law should apply to that, because whether attorney's fees are awarded is, in California, a procedural question. The California cases have held that these statutes are applied retroactively because it is fundamentally a procedural issue whether fees are awarded. That being the case, this Court does not engage, and a California court would not engage, in a weighing of interest between California and Texas law on the issue of fees. If it's a procedural issue, which attorney's fees are, then simply California law is applied. And under California law, attorney's fees are not awardable in this kind of case. The only exception would be if it were found that the insurer had acted in bad faith. Judge Elston properly concluded that there was no evidence here of bad faith. Under Texas law, there's no bad faith applicable in this kind of case. And the only bad faith law in Texas is if the insurer has a settlement offer within limits and doesn't accept it. That didn't happen here. Under California law, where there's a reasonable position that the insurer has taken and there's a genuine dispute over coverage, then there's no basis for bad faith. And that's exactly, even if the Court were to determine that there was a duty to defend, we're certainly looking at a situation where travelers had a very reasonable position and, therefore, under the genuine dispute doctrine, there would be no basis for a bad faith finding. Counsel, before you sit down, I have a housekeeping question. You cited in your remarks to the Westport Insurance, Judge Folsom's case. Yes. Did you say that there was a law review article referred to by him? No, no, no. I referred to that as a learned analysis of Texas law. I believe his opinion. It's the part that begins, Texas uses extrinsic evidence to decide the duty to defend only in very limited circumstances. Yes, although there are pages and pages of discussion before the Court reaches that conclusion where the Court goes into analysis of many, many Texas cases to come to that conclusion. Thank you. Thank you, Your Honor. Mr. Borowski, you have some time left, but I don't think your opposing counsel gave you very much to shoot at in terms of the cross appeal. Your reserved time only has to do with the cross appeal, so you can speak to that other issue. With respect to the cross appeal and the bad faith issue, all these issues kind of intersect. Well, you understand what the rule is. I know, and I'm trying to be very careful to the rule, and I just want to respond to what Mr. Holden just said. Okay. There's a suggestion that if travelers had more information, they would have done something different, but they're asserting even through today that there's no coverage, not that they needed more information about the temporary restraining order. Even through today, they have everything they need to know about what happened, and they just say there's no coverage, which is — and there wasn't any real mystery about whether there, in fact, was coverage. If I could — the person who denied the tender, Catherine Ezell, explained in her deposition, which is part of the Supplemental Act, that she understood Legacy Partners, Inc. was an insured, but Mr. Butcher wouldn't be covered even though Legacy Partners, Inc. was an insured. I mean, the analysis that they made was to basically avoid any investigation, any investigation, any analysis at all of what the true facts were, even though we believe the facts were clear. The last thing I want to say with respect to the bad faith is I don't want to give our declarations of our experts that were before the Court short shrift. The deposition of the past insurance commissioner of the State of California who concluded coverage in bad faith, Mr. Quinn, as well as Otis Hess, and we believe that was before the Court as well at the time of the summary judgment, which we — which was not, for some reason, overlooked. It wasn't even mentioned by Judge Elston. So unless I have any questions, I don't want to — No questions, Counselor. Thank you. Thank you very much. The case just argued will be submitted for decision, and the Court will adjourn for this session.
judges: O'scannlain, Tashima, Matz